IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARY WALLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.:    06-BE-1283-S |
| ) | |
| JOHN E. POTTER, ) | |
| POSTMASTER GENERAL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the court on Defendant's motion for summary judgment (Doc. 11). For the reasons outlined below, the court hereby GRANTS this motion.

### I.  STATEMENT OF FACTS

Plaintiff Mary Walls brought this Title VII claim for hostile work environment against her present employer, the United States Postal Service. The court has reviewed the facts of this case, drawing all justifiable inferences in favor of the nonmovant. Ms. Walls, a sixty year-old white female, has been employed by the United States Postal Service as a mail carrier at the Cahaba Heights station for the past twenty years. She alleges that she has been subjected to a hostile work environment because her supervisors, Shirley Alexander and Nesa Smith – both younger, black females – harassed her based on her race, age, and prior EEOC activity.

Ms. Walls alleges several specific incidents she claims demonstrate the hostile work environment she experienced. On June 18, 2003, Ms. Walls called her supervisor, Shirley

Alexander, at three o'clock, according to company policy, to report that she would not be able to complete her route that day. The supervisor's responsibility is to inform the carrier at that time whether she should continue on with her route or return the remaining mail to the Post Office for delivery later. Whenever a replacement carrier cannot be obtained to help finish distributing the mail, the carrier will be asked to complete her route. On this day, Ms. Walls was instructed to work overtime by continuing to distribute the mail.

Two days later, on June 20, 2003, Ms. Walls' supervisor, Ms. Alexander, only gave Ms. Walls ten minutes to load her vehicle. Ms. Walls asserts that ten minutes is an inadequate amount of time to load a vehicle.

Then, on June 25 and 26, 2003, Ms. Walls' supervisor, Ms. Alexander, followed her on her postal route. At a stop, Ms. Alexander asked Ms. Walls in an "ugly tone" why it took her so long to get to a certain scan point – a point in a carrier's route where she stops and scans in a bar code to relay her location. Also, Ms. Alexander, added two additional scan points to Ms. Walls' route on these particular days. On the following day, June 27, 2003, Ms. Walls' supervisor was waiting for her at the first scan point.

Finally, on July 10, 2003, Ms. Walls was denied the option to fill out a PS Form 3996 – the form a carrier completes asking for auxiliary assistance when she predicts she will have difficulty finishing her entire route that day in a timely manner. Ms. Walls routinely fills out a Form 3996, because she admittedly is often unable to complete her mail route in a timely manner. She testified that this was the only time she was prevented from filling out the form.

In addition to these specific incidents, Ms. Walls claims that her supervisors continuously made belittling comments, and antagonized or humiliated her in front of her fellow employees

and peers. Her supervisors admittedly had other mail carriers "case" her mail for her – *i.e.,* box up all the mail she is to deliver that day. Ms. Walls' supervisors claimed they took this step so that she could begin her route earlier and possibly finish on time. Ms. Walls' claims that having others case her mail constitutes a form of harassment because she then does not know exactly how much mail she must deliver that day, which makes her perform her route more slowly. Additionally, she claims her supervisors "stalked," "badgered," and "bullied" her on the days she was followed.

Ms. Walls claims that the incidents described above requiring her to work overtime, giving her only ten minutes to pull down and load her truck, "stalking" her while she was on her postal route, and denying her the opportunity to fill out a Form 3996, when taken in the aggregate, constitute an impermissible hostile work environment based on her race, age, or prior EEOC activity.

## II.   STANDARD OF REVIEW

Summary Judgment allows a trial court to decide cases where no genuine issues of material fact are present. *See* Fed. R. Civ. P. 56. A court must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *Id*.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. V. Catrett,* 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The movant can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof.  *Celotex, 477* U.S. at 322-23.  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. At 324 (quoting Fed. R. Civ. P. 56(e)).  The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on [his] pleadings." *Id*.

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mutual Ins.Co.*, 193 F. 3d 1274, 1282 (11th Cir. 1999).  After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  However, the nonmovant can defeat summary judgment by showing either a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law.

### III.   DISCUSSION

To establish a claim of hostile work environment, Plaintiff must first establish sufficient facts to support her prima facie case: (1) she is a member of a protected group; (2) she was

subjected to unwelcome harassment; (3) the harassment must have been based on a protected characteristic of the Plaintiff; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory and abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th Cir. 2002).

For the purposes of summary judgment, Defendant disputes only the third and fourth prongs of Plaintiff's prima facie case: whether the harassment was based on a protected characteristic of the Plaintiff; and whether the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory and abusive working environment.

Defendant claims Plaintiff failed to provide evidence in support of the third prong: whether the harassment was based on a protected characteristic of the Plaintiff. In her deposition, Plaintiff admitted that she did not believe her supervisors' actions on June 18, 20, and July 10, 2003, – requiring Ms. Walls to work overtime, giving her only ten minutes of loading time, and denying her request to complete a Form 3996, respectively – were due to her race, age, or in retaliation for any prior EEOC activity. Ms. Walls not only has conceded that these incidents were not based on her age, race, or any prior EEOC activity, but she has also failed to put forward any other evidence suggesting an improper motive behind these incidents. Plaintiff's other claims of harassment occurred on June 25, 26, and 27, 2003, when her supervisors allegedly followed and observed her on her route, asked her in an "ugly tone" why it took her so long to get to a certain scan point, and added two scan points to her route. Plaintiff has not

provided any supporting evidence that theses specific incidents were motivated by age, race, or her previous EEOC activity.

Plaintiff also argues that, generally, Ms. Alexander and Ms. Smith made belittling comments and antagonized and humiliated her in front of her fellow employees. Plaintiff contends that she has been singled out and harassed, and that Ms. Alexander treats black employees better than white employees. Plaintiff has put forward as evidence the affidavit of several other employees who witnessed her being harassed.

In the opinion of two – Mr. Billy R. Woodward and Ms. Lee R. Binion – the harassment was related to Ms. Walls' race. Mr. Woodward's affidavit stated that "there has been a disparity in treatment between Ms. Walls [sic] performance and the performance of Black Letter Carriers"; "management violates there [sic] own rules, even allows [sic] a float person to delay the mail (a felony) while at the same time persecuting a 60+ year [old] white female carrier [Ms. Walls] . . . for not meeting their standards"; and "a black carrier can do no wrong while the 60+ year old white female is at fault and persecuted by her supervisor."

Ms. Binion stated in her affidavit: "On many occasions, I have witnessed Mary L. Walls being harassed by the management staff at the Cahaba Heights Post Office. . . . The harassment seems to be racially biased as Ms. Walls is a white female and the management staff is comprised of two black females." Ms. Binion also complained that she personally experienced harassment on the basis of her race, though such testimony does not bear on Ms. Walls' claims of hostile work environment.

Although Plaintiff testified in her deposition that she did not believe the specific incidents of alleged harassment were based on her race, age or prior EEOC activity, in other portions of her

6

deposition she testified that she believed she was treated differently because of her race.  Such testimony, in combination with the affidavits of other employees, is sufficient to create a genuine issue of material fact as to whether any alleged harassment of Ms. Walls was based on her race or age.

      Defendant also contests whether Plaintiff established the fourth prong of a hostile work environment: the harassment was sufficiently severe and pervasive to alter the terms and conditions of employment and create a discriminatory and abusive working environment.  Evaluating whether harassment is sufficiently severe and pervasive requires a consideration of both subjective and objective components: the employee must subjectively *perceive* the alleged harassment as severe and pervasive; and, objectively, the environment must be such that a *reasonable person* in the employee's position would find it hostile or abusive.  *Abbes v. Embraer Services, Inc.*, 195 Fed.Appx. 898, 901-02 (11th Cir. 2006) (emphasis added) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238 at 1246 (11th Cir. 1999)).  In considering the objective component, courts have looked to four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance." *Id.* at 902.

      Plaintiff claims that she was harassed by her supervisors continuously when they followed her on her route and when they made belittling comments and antagonized and humiliated her in front of her fellow employees.  The court notes that, although the specific incidents Plaintiff has identified occurred during a two or three week time period, from mid-June until early July 2003, she claims the harassing activity has occurred on a daily basis for six years.

Thus, according to Plaintiff's testimony, the allegedly harassing conduct occurred on a frequent basis.

As to the remaining factors, the court finds relevant Defendant's argument that Plaintiff's supervisors had to take certain measures – such as following her on her route and having others "case" her mail for her – as a result of Plaintiff's habitual inability to complete her postal route. In light of Plaintiff's admitted, repeated failure to complete her route on time, her supervisors' attempts to follow her and case her mail seem reasonable, rather than severe. In addition, such measures were not designed to humiliate or physically threaten Plaintiff (and arguably do not even constitute "mere offensive utterance[s]"). Finally, Plaintiff's supervisors' attempts to follow her or assist her in "casing" her mail could not "unreasonably interfere" with her job performance because Plaintiff has admitted that her job performance was substandard – she could not deliver her route during the required eight hours – and these measures were designed to improve her job performance.

Plaintiff has also alleged that Ms. Smith got on a loud speaker and instructed Ms. Walls to "pull down" her load of mail in such a manner as Ms. Walls was embarrassed and intimidated in front of all her coworkers. This incident, however, appears to have been an isolated one, and does not rise to the level of severity or pervasiveness required to establish a hostile work environment claim.

Taken as a whole and when evaluated using the four factors outlined above, the alleged harassment of which Ms. Walls complains is not sufficiently severe or pervasive so as to alter the terms and conditions of employment and create a discriminatory and abusive working environment. She, therefore, has not shown facts necessary to prove the fourth prong of a hostile

work environment.

Defendant has demonstrated that Plaintiff has failed to put forward sufficient evidence to create a genuine issue of material fact as to the fourth prong of Plaintiff's prima facie case. Accordingly, Defendant has demonstrated that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law. Defendant's motion for summary judgment, therefore, is due to be GRANTED.

## IV.   CONCLUSION

For the reasons discussed above – specifically, that Defendant has shown that no genuine issue of material fact exists as to the fourth prong of Plaintiff's prima facie case, and that it is entitled to judgment as a matter of law – Defendant's motion for summary judgment is GRANTED. This case is DISMISSED with prejudice, costs taxed as paid.

A separate order will be entered contemporaneously with this memorandum opinion. DATED this 26th day of July, 2007.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE